UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BERKLEY REGIONAL INSURANCE COMPANY,       16 cv 2383 - ___

                        Plaintiff,

      -- against --                                                    **Complaint**

SAFECO INSURANCE COMPANY OF
AMERICA  and

DELRIC CONSTRUCTION CO., INC.,

                        Defendants.
-----------------------------------------------------------------X

For its complaint against the above-named defendants, plaintiff, **Berkley Regional Insurance Company,** avers the following:

### Jurisdiction

    **1.1**  This court has subject-matter jurisdiction over this case pursuant to 28 USC § 1332, on the basis of diversity of citizenship and amount in controversy.  The amount exceeds $ 1.4-million, without interest or costs, specific dollar amounts being set forth under the separate "Counts" which follow.  None of the defendants is a citizen of the same state as the plaintiff, as is more particularly set forth below, under "Parties."

    **1.2**  This court has personal jurisdiction over both of the defendants for each of the following, independent reasons:  because the defendants consented to the jurisdiction of this court, in a writing they both signed on or about September 17, 2009; also because they consented to jurisdiction here when they each obtained formal authorization to do business in New York; and also because this case arises out of business the defendants transacted in New York, specifically, concerning a construction project in Staten Island.

1

## Venue

**2.1** Venue is proper in this district pursuant to 28 USC § 1391, because a substantial part of the events giving rise to this action occurred in Staten Island, NewYork, which is within this district; and also because the defendants stipulated to venue here, in a forum-selection clause, in the writing they signed on or about September 17, 2009, which writing is a basis for claims made in this action.

## Parties

The parties' full names appear in the caption. In what follows, they will be referred to for brevity respectively as Berkley, Safeco, and Delric.

**3.1** Plaintiff, Berkley, is incorporated in Delaware. Berkley's principal place of business is in Iowa.

**3.2** Defendant Safeco is incorporated in the state of Washington. Safeco's principal place of business is in Massachusetts.

**3.3** Defendant Delric is incorporated in New Jersey. Delric's principal place of business is in New Jersey.

## Facts relevant to all counts

**4.1** On or about September 11, 2009, defendant Delric entered into a contract with the Dormitory Authority of the State of New York, for work on a construction project in Staten Island, New York, for a new state courthouse and adjacent improvements.

**4.2** Prior to the approval of such a contract, New York law requires the contractor to provide a surety bond guaranteeing prompt payment for labor and material furnished to

the contractor (or to any of the contractor's subcontractors) in the prosecution of the work called for in the contract.

    **4.3**  To comply with New York law, a surety bond was given to the Dormitory Authority for Delric's contract.

    **4.4**  The bond was a labor-and-material payment bond (no. 6395712) dated September 17, 2009.

    **4.5**  The dollar amount set forth in the payment bond was more than $ 77-million.

    **4.6**  Delric's surety on the bond was defendant Safeco.

    **4.7**  For Delric's contract with the Dormitory Authority for the Staten Island project, certain labor and material was furnished by a company named the A.G.Construction Co., Inc. (hereinafter "AG").

    **4.8**  AG's work was mainly cast-in-place concrete work, including for footings and foundations and also for upper levels of the building.

    **4.9**  AG was retained for its work on the Staten Island project by a written "Subcontract Agreement" with Delric, dated October 15, 2009.

    **4.10**  AG furnished all the work and materials required of AG under that October 2009 subcontract between AG and Delric.

    **4.11**  AG also furnished certain extra or additional work and materials on the project for Delric, beyond what was described in the original plans and design drawings for the contract.

    **4.12**  Delric has not paid in full for all the labor and material furnished by AG for the project. Specific dollar amounts earned by AG but unpaid by Delric will be set forth below, under separate "Counts."

**4.13** The payment bond given by Delric and its surety Safeco to comply with the New York statute provides in pertinent part as follows:

> [The] Contractor shall promptly make payment ... for all labor and material used or reasonably required for use in the performance of the Contract ...

> \* \* \*

> [Every] claimant ... who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond ...

**4.14** More than 90 days have gone by since AG furnished the labor and materials for which payment is sought in this action.

**4.15** All money due from Delric for AG's work has been assigned by AG to plaintiff, Berkley, including but not limited to amounts for progress payments and for the final payment, for release-of-retainage money, and for amounts due for change-orders, for extra or additional work, for damages, and as the proceeds of claims.

**4.16** AG assigned all that money to Berkley in consideration for Berkley's advancing money to pay various labor and material bills for AG.

### Count I : Unpaid Contract Balance

**5.1** In the subcontract between AG and Delric, the original agreed price was $5,035,722.00.

**5.2** Approved change orders to that original subcontract resulted in a net increase of $23,115.10, making for an adjusted subcontract price of not less than $5,058,837.10.

**5.3** No more than $4,757,107.42 has been paid against that sum, leaving a balance of not less than $301,729.68 due and owing.

5.4 As AG's assignee, plaintiff Berkley is therefore entitled to judgment against defendants Safeco and Delric, jointly and severally, for not less than $301,729.68, plus interest from August 7, 2015.

### Count II : Unpaid for Additional Work and Concrete

6.1 During the course of the Staten Island project, AG furnished additional labor and materials, more particularly, additional work and extra concrete, in order to make the concrete footings and foundation elements for the building larger than the sizes shown on the original contract plans and design details.

6.2 The larger footings and foundation elements became necessary in order to fill in spaces that were created where excavations for the footings and foundations went deeper or wider than planned, beyond the lines depicted on the original contract plans and drawing details.

6.3 The excavation work for the footings and foundations was to be done by Delric, as part of Delric's contract with the Dormitory Authority, and was in fact done by Delric or a subcontractor working for Delric.

6.4 Wherever Delric's excavation work created such "over-excavations," additional concrete was required by the specifications of Delric's contract with the Dormitory Authority, beyond what otherwise would have been required, but for the over-excavations.

6.5 Pursuant to those same specifications, the Dormitory Authority was to pay for the additional concrete work and materials -- unless the "over-excavation" was the result of error by Delric, in doing Delric's excavation work.

6.6 In either event, however, -- whether a given over-excavation by Delric was or was not an error on Delric's part -- AG was entitled to be paid for the additional work and concrete that, after all, AG did in fact provide.

6.7 And, whether error or not, Delric was of course fully aware of every instance where Delric had over-excavated and where, consequently, AG provided additional concrete.

6.8 Moreover, though already called for in the specifications for Delric's contract with the Dormitory Authority, in each instance of over-excavation, the necessary additional concrete was furnished and installed by AG at the special instance and request of Delric and under the supervision of Delric personnel.

6.9 AG performed the additional work and supplied the additional concrete between on or about May 15, 2010, and on or about December 17, 2010.

6.10 According to AG, the fair and reasonable value of the additional concrete work and materials furnished by AG, to fill Delric's over-excavations, for which AG has not been paid, added up to at least $301,907.95.

6.11 Delric has not paid for any part of that sum for the additional concrete work and materials that AG furnished for Delric. Nor has Delric's surety, defendant Safeco.

6.12 Therefore, as AG's assignee, plaintiff Berkley is entitled to judgment against defendants Safeco and Delric for the additional sum of $301,907.95, plus interest from December 17, 2010

### Count III : Unpaid Labor and Material Costs

7.1 In Delric's contract with the Dormitory Authority, among other things, Delric agreed to perform certain excavation work for the project.

7.2  Delric agreed to do that excavation work so that it would result in an excavation conforming with the Dormitory Authority's plans and design drawings.

7.3  Delric did not do so, however, but instead, in one or more instances, the excavation created by Delric deviated from the contours depicted in the Dormitory Authority's plans and drawings.

7.4  More particularly, there were instances where Delric "over excavated," that is, where Delric excavated wider or deeper than the lines delineated in the Dormitory Authority's contract plans and drawings.

7.5  According to Delric, Delric over-excavated because Delric encountered subsurface conditions that differed materially from what Delric contended could reasonably have been anticipated.

7.6  According to the Dormitory Authority, however, some of Delric's over-excavations resulted instead from the way Delric chose to have its excavation work done, not from subsurface conditions.

7.7  Whatever the reasons for Delric's over-excavations, in fact Delric's excavation work took more time than it otherwise would have taken.

7.8  Consequently, Delric did not make the worksite available to AG, for AG to do AG's work, until much later than would have otherwise have been the case.

7.9  In the meantime, the costs for labor and materials needed by AG had gone up.

7.10  As a result, AG incurred increased costs for labor and materials, beyond what those costs would have been if AG had been given access to the worksite earlier.

7.11  According to Delric, Delric should have obtained compensation for AG's increased costs from the Dormitory Authority, because, according to Delric, AG's

7

increased costs were a consequence of what Delric claimed were "differing subsurface conditions."

**7.12** If Delric is correct in that, then Delric should have obtained compensation for AG from the Dormitory Authority, but Delric failed to do so.

**7.13** According to the Dormitory Authority, however, Delric's problems with the excavation were largely of Delric's own making, because in a number of instances the contours of Delric's excavation deviated from what Delric's contract actually prescribed.

**7.14** If the Dormitory Authority is correct, then Delric failed to perform specific contract obligations as agreed, and consequently failed to give AG timely access to the worksite, which was manifestly a fundamental obligation of Delric's under Delric's subcontract with AG.

**7.15** AG computes AG's increased costs for labor and materials AG furnished to Delric for the project added up to at least $132,761.40.

**7.16** No part those increased labor and materials costs has been paid by Delric or by defendant Safeco as Delric's surety on their labor-and-material payment bond.

**7.17** By reason of the foregoing, as AG's assignee, plaintiff Berkley is entitled to judgment against defendants Safeco and Delric for $132,761.40, plus interest from December 17, 2010.

### Count IV : Unpaid Job Costs

**8.1** In addition to costs for labor and materials, AG had to and did incur certain ongoing jobsite costs during the time AG was engaged on the project, including but not limited to costs for jobsite supervisors, equipment, and services.

**8.2** Because of the changes in the excavation and foundation work, AG was kept on the project for a longer period of time than would otherwise have been the case.

**8.3** As a result, AG incurred jobsite costs, for the extended period of time AG was kept on the job, which AG calculates to have totaled $664,450.22.

**8.4** No payment at all for those job costs has been paid by Delric or by defendant Safeco, Delric's surety on their labor-and-material payment bond.

**8.5** By reason of the foregoing, as AG's assignee, plaintiff Berkley is entitled to judgment against defendants Safeco and Delric for $664,450.22, or such other amount as may be determined, plus interest from December 17, 2010.

### Count V : Payments Mandated by Statute

**9.1** Payments to subcontractors (like AG here) for public works in New York (like the Staten Island Courthouse) are governed by statute in New York.

**9.2** Under the applicable law, the prime contractor Delric was permitted temporarily to retain from periodic payments otherwise due the subcontractor AG amounts not exceeding five (5%) percent of such periodic payments.

**9.3** In violation of the law, Delric was in fact withholding ten (10%) percent from periodic payments to AG, from the start of AG's work on the project, in 2010, until on or about July 8, 2013.

**9.4** During that same time period, no more than five (5%) percent was being retained from Delric by the Dormitory Authority.

**9.5** Nevertheless, during all that time, Delric was retaining ten (10%) percent from AG, and using the additional, and illegal, five (5%) percent taken out of AG's periodic progress payments for Delric's own use and benefit.

**9.6** The illegal retainage taken by Delric added up to approximately $250,000 before Delric was made to disgorge any of the illegal excess retainage taken by Delric.

**9.7** New York law mandates the payment of interest on such illegally retained amounts, at the rate of one percent per month or fraction of a month during which such amounts remained unpaid.

**9.8** To date, Delric has failed, neglected, omitted, or refused to pay or otherwise account for those mandatory interest payments.

**9.9** Furthermore, New York law mandates that payments to subcontractors are to be made within seven days after the contractor receives payment for the subcontractor's work from the public project owner.

**9.10** There is reason to believe Delric did not pay or credit to AG all amounts Delric collected from the Dormitory Authority for certain change-order work done by AG.

**9.11** Instead, it appears that Delric may have illegally kept for itself part of the payments the Dormitory Authority made to Delric for change-order work performed by AG.

**9.12** As a result of all the money illegally held back from AG by Delric, Delric has been unjustly enriched.

**9.13** The exact amount by which Delric has been unjustly enriched may amount to $97,879 or more, but cannot be determined without an accounting by Delric, of amounts Delric collected from the Dormitory Authority and amounts paid or credited to AG by Delric, and the dates of those receipts and disbursements by Delric.

9.14  By reason of the foregoing, Delric should be made to give such an accounting, and the amounts by which Delric is thereby determined to have been unjustly enriched ahould be added to the judgment against the defendants in this case. together with interest from appropriate dates, from as early as the illegal excessive retainages held back from AG by Delric.

### Count VI : Statutory Counsel Fees.

10.1  Defendants issued their payment bond in order to comply with a New York statute, specifically, Section 137 of the State Finance Law of the State of New York.

10.2  Under that statute, this court may award attorneys fees to the plaintiff if the defendants interpose a defense here without a substantial basis in law or fact.

10.3  The statute provides that such determination is to be made after reviewing the entire record in the case.

10.4  Such determination must therefore await the conclusion of this case.

10.5  Nor can the dollar amount of plaintiff's attorneys fees be determined until the end of this case.

10.6  Accordingly, plaintiff reserves the right to seek an award for plaintiff's attorneys fees and disbursements at the end of this case.

### Judgment Requested

Wherefore, plaintiff respectfully requests judgment for the following amounts (or such greater or lesser amounts as may be determined by the court) under the following counts:

| | | |
|---|---|---|
| **Count I:** | **Unpaid Contract Balance** | $ 301,729.68 |
| **Count II:** | **Unpaid Additional Concrete** | $ 301,907.95 |
| **Count III:** | **Unpaid Labor & Material Costs** | $ 132,761.40 |
| **Count IV:** | **Unpaid Jobsite Costs** | $ 664,448.46 |
| **Count V:** | **Statutory payments** | $   97,879.00 |
| **Count VI:** | **Statutory Counsel Fees** | $ To be determined |

Pre-judgment interest should also be included in such judgments, and also statutory costs to the extent not subsumed in a judgment under Count VI. Judgment is sought against the defendants jointly and severally. Plaintiff also requests such other and further relief as may be just and equitable.

**Dated**  New York, NY
        May 11, 2016

>                                **Zichello & McIntyre, LLP**
>                                *Attorneys for Plaintiff, Berkley*
>
>                                By ___Vincent J. Zichello___
>                                    Vincent J. Zichello
>                                Office and Post Office Address
>                                708 Third Avenue
>                                New York, NY 10017
>
>                                Tel  212-972-5560
>                                E-mail  zimc@msn.com